UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:09-CV-402-KSF

GILES ANTHONY COLE                                                                    PLAINTIFF

vs.                                **OPINION AND ORDER**

KENNETH R. SHADOAN,
JANICE COX-BLACKBURN,
VICKIE GRIGSON, and
PARIS BOARD OF EDUCATION                                   DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on the motion of Defendants Janice Cox-Blackburn, Superintendent of Paris Independent Schools; Vickie Grigson, Principal of Paris High School; and the Paris Board of Education for partial summary judgment on Plaintiff's state law claims against them. For the reasons discussed below, the motion will be granted.

**I.     BACKGROUND**

Plaintiff's claims against the Paris Board of Education, Superintendent Cox-Blackburn and Principal Grigson arise from his attempted suicide on May 9, 2009 and his allegations of sexual harassment by his high school teacher, co-Defendant Kenneth Shadoan, during the 2008-09 school year. Plaintiff alleges the moving Defendants are liable to him for the negligent hiring of Shadoan, for failing to provide a safe atmosphere for Plaintiff; and for outrageous conduct. It is important to keep in mind that the present motion does not address any liability of Shadoan for his own conduct toward the Plaintiff in 2008 and 2009. Instead, this motion is limited to the liability of the school principal, school superintendent and school board for Shadoan's conduct.

These defendants seek partial summary judgment on the grounds that: (1) the state law claims against the Board of Education and against Cox-Blackburn and Grigson in their official

capacities are barred by governmental immunity; and (2) the claims against Cox-Blackburn and Grigson in their individual capacities are barred by qualified immunity.

Plaintiff concedes that the Board of Education is entitled to summary judgment on Plaintiff's state law claims. [DE 54, n. 3]. He also concedes that Cox-Blackburn and Grigson are immune from liability for state law claims against them in their official capacities. *Id.* at n. 4. He argues, however, that these defendants are liable in their individual capacities for Shadoan's conduct.

The essential facts are that Shadoan was Plaintiff's math teacher for 2008-09. Plaintiff was not doing well in math, and he began after school tutoring with Shadoan in the fall. [Cole Depo. 73-74]. During these sessions, Plaintiff claims Shadoan would rub him on the shoulders or on his back and Shadoan would rub his knees against Plaintiff's and on his thighs. *Id.* at 73. Plaintiff did not report this touching to anyone. *Id.* at 76-77.

Throughout the school year, Plaintiff was dating Kaylyn Shumate, whom he met in band camp in the summer of 2008. *Id.* at 9-10. During the second semester, Shadoan began texting Plaintiff and making inappropriate remarks. *Id.* at 80-81. Again, Plaintiff did not tell anyone. *Id.* at 82. On one occasion, Plaintiff alleges Shadoan exposed himself in the locker room of the YMCA, but Plaintiff did not tell anyone. *Id.* at 84-85. Shadoan then began asking for pictures of Plaintiff. *Id.* at 86. The night of May 8, 2009, Plaintiff texted nude photos of himself to Shadoan. *Id.* at 95-98. Plaintiff did not tell anyone about the requests or the pictures. *Id.* at 98-99. Saturday morning, May 9, Shumate found texts and the photographs on Plaintiff's phone, and confronted him about them. They argued, and she told Plaintiff to leave her house, which he did around 11:00 a.m. after deleting the pictures. *Id.* at 101. Plaintiff went home and immediately attempted suicide. *Id.* at 107.

Plaintiff does not believe anyone knew about the texts before May 9, 2009. [Cole Depo., pp. 92-93]. After noon on May 9, Shumate contacted a trusted teacher, Mr. Slone, about what she had seen. [Shumate Depo., p. 73]. Slone said he would contact someone to help her. *Id.* at 76. Slone called Ms. Grigson, but she was out of town for the weekend. [Grigson Depo. (1/7/11), p. 36].

2

Grigson does not recall if she received the message Saturday night or Sunday, but she talked with Shumate on Monday morning, May 11, and called the police. *Id.* at 37. Mr. Shadoan was immediately suspended and was arrested on May 13. [DE 45-3, Ex. 2]. He was terminated on May 14, 2009. [DE 52-5].

In response to the motion for partial summary judgment, Plaintiff relies on the fact that Mr. Shadoan was formerly employed by the Pulaski County School System, but resigned after being accused of sodomy in Whitley County.[1] [DE 54, p. 8]. Mr. Shadoan was acquitted of those charges. *Id.* During his 2006 interview with Paris High School's Principal Grigson and others, Shadoan acknowledged charges and his acquittal and encouraged Grigson to check with two teachers she knew who were familiar with the situation. [DE 54, p. 8; Grigson Depo. (11/5/10) at 60-64]. Grigson called the two people mentioned by Shadoan, conducted a Google search, and found a newspaper article that confirmed what Shadoan had told her. [DE 54, pp. 8-9]. The Assistant Superintendent called Pulaski County. Plaintiff argues that the Assistant Superintendent was told "they did not recommend that Mr. Shadoan be hired." *Id.* at 9. Plaintiff provides no record citation for this statement, and Defendants assert there is no admissible evidence in support. [DE 56, p. 7, n. 4].

In support of his claim of negligent hiring, Plaintiff contends that further telephone calls should have been made; parents should have been notified; and a new criminal background search should have been conducted. [DE 54, p. 16]. He also argues that the hiring function is ministerial and not protected by qualified immunity.

Plaintiff next claims that these Defendants were negligent in their supervision of Mr. Shadoan. He particularly complains that Mr. Shadoan was allowed to conduct after-school unsupervised tutoring sessions with Plaintiff. *Id.* at 17-18.

---

[1] Plaintiff claims Shadoan "was arrested in 2005 and charged with 1st Degree Strong Arm Sodomy." [DE 54, p. 8]. There is no crime in Kentucky named "Strong Arm Sodomy." Mr. Shadoan testified he was not arrested for this accusation. [Shadoan Depo. 68.]

In his response, Plaintiff claims for the first time that these Defendants were negligent in their enforcement of school policies in that they did not protect Plaintiff during his tutoring sessions and later failed to protect him from the bullying of other students. *Id.* at 19-20. He also argues that Ms. Grigson retaliated against Plaintiff by not allowing him to stay in school through alternative means and that she performed her duties in bad faith. *Id.*

Finally, Plaintiff argues that Ms. Grigson committed the tort of outrage by failing to investigate promptly or fully or to contact police immediately upon hearing about Mr. Shadoan's alleged conduct with Plaintiff. Plaintiff suggests a call to his mother may have allowed her to prevent his suicide attempt. *Id.* at 20-21. Plaintiff also argues Ms. Grigson failed to protect him after learning of several fights and name calling. *Id.*

Plaintiff contends Superintendent Cox-Blackburn's conduct was also outrageous because she should be held accountable for giving Mr. Shadoan a second chance and "then placing him in an unsupervised setting without warning parents of his prior conduct." *Id.* at 22. He argues that she "should have implemented a plan to protect [Plaintiff] after Mr. Shadoan was arrested" and should not have allowed him "to be subjected to violence and discriminatory comments." *Id.*

## II.     ANALYSIS

### A.     Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light

4

most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

### B. Official Immunity

"'Official immunity' is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. ... Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative capacity, in which event his/her actions are included under the umbrella of sovereign immunity...." *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2002). Plaintiff conceded that the Board of Education is absolutely immune and is entitled to summary judgment on his state law claims. [DE 54, n. 3]. He also conceded that Cox-Blackburn and Grigson are immune from liability for his state law claims in their official capacities. *Id.* at n. 4. Accordingly, summary judgment will be granted to these Defendants on these state-law claims.

### C. Qualified Immunity

Plaintiff claims that the Superintendent and the Principal are individually liable for negligent hiring of Shadoan and for failure to supervise him. These Defendants argue they are entitled to summary judgment because their conduct is covered by qualified immunity. Qualified immunity "affords protection from damages liability for good faith judgment calls made in a legally uncertain

5

environment." *Yanero,* 54 S.W.3d at 522. It prevents public officers or employees from being liable for:

> the negligent performance .. of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority.... Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, i.e., one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain and imperative, involving merely execution of a specific act arising from fixed and designated facts.

*Id.* "Once the officer or employee has shown *prima-facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Id.* at 523; *Autry v. Western Kentucky University*, 219 S.W.3d 713, 717 (Ky. 2007) ("The burden is on the plaintiff to show that the public official or employee was not acting in good faith.").

Discretionary acts or functions are "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Id.* at 522. More recently, Kentucky's highest court said:

> Discretion in the manner of the performance of an act arises when the act may be performed in one or two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

*Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010). On the other hand, ministerial acts:

> are those done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how or under what circumstances their acts are to be done.

*Doe v. Patton*, 381 F. Supp.2d 595, 603 (E.D. Ky. 2005), quoting Restatement (Second) of Torts § 895D.

### D. Negligence

Plaintiff alleges in Count II of the Complaint that the "School Defendants" were negligent in their hiring of Shadoan and negligent for failing to adequately supervise him. [DE 1-5, pp. 7-8]. The term "School Defendants" is never defined in the Complaint. In response to the motion for

6

summary judgment, Plaintiff refers to Principal Grigson and Superintendent Cox-Blackburn generically as "the Defendants." [DE 54, pp. 14-20]. The only facts cited in support of Plaintiff's negligence allegations, however, refer to Principal Grigson. *Id.* Plaintiff does not identify any specific duty owed by Superintendent Cox-Blackburn to Plaintiff or what her role was, if any, in hiring or supervising Shadoan.

### 1. Negligent hiring

"[P]ersons entitled to official immunity cannot be held vicariously liable for the negligence of those employed by them, if they've employed persons of suitable skill." *Rowan County v. Sloas*, 201 S.W.3d 469, 476 (Ky. 2066), citing *Yanero*, 54 S.W.3d at 528. There is no allegation that Shadoan was not competent to teach math, the function for which he was hired.

Instead, Plaintiff argues that the hiring function is ministerial, rather than discretionary, based upon an interpretation of an Oklahoma statute in an unpublished decision, *J.M. v. Hilldale Independent School District*, 2008 WL 2944997 at *12 (E.D. Okla. 2008). [DE 54, pp. 16-17]. Kentucky law is the opposite, however. "Evaluating the credentials of a prospective employee is an inherently subjective process which, of course, is the essence of a discretionary function." *Yanero*, 54 S.W.3d at 528. *See also Doe v. Magoffin County Fiscal Court*, 174 F. App'x 962, 973 (6th Cir. 2006) ("Salyer's decision to hire Patton and not to perform a background check were discretionary functions because Salyer was not enforcing or failing to enforce any particular order or rule.").

Plaintiff complains that Grigson did not perform a criminal background search on Shadoan and relied instead on the background check performed by the Pulaski School System four years earlier. Plaintiff asserts there was a policy requiring a background search. [DE 54, p. 16]. Plaintiff is wrong on both points. KRS 160.380(4)(a) provides that a "superintendent shall require a national and state criminal background check," not a principal. "Excluded" from this requirement, however, are persons "who were employed in another certified position in a Kentucky school district within six (6) months of the date of hire and who had previously submitted to a national and state criminal

7

background check for the previous employment." KRS 160.380(4)(a). It is undisputed that Shadoan was employed by the Pulaski School System within six months prior to his date of hire in Paris. Accordingly, neither Grigson nor Cox-Blackburn had a duty to require a criminal background check. When there is no duty, there can be no breach.

Moreover, the September 2002 background check on which they relied showed no criminal history record. [DE 56-1]. Shadoan disclosed the Whitley County charges and his acquittal during the application process. Plaintiff does not dispute that the complaining witness in Whitley County was an emancipated adult who was not enrolled in the Pulaski school system. [DE 56, p. 7, n. 4]. The Defendants confirmed the acquittal. Plaintiff does not identify any prior conviction of a sex crime that would have come to light with another criminal background search, much less that such a search would have made it "plainly obvious" at the time of hiring that Shadoan would have sexually harassed a student. *See Doe v. Patton*, 381 F. Supp. 595, 604 (E.D. Ky. 2005).

Plaintiff relies on the unpublished opinion of *Cooper v. Unthank*, 2009 WL 3320924 (Ky. Ct. App. 2009), which involved the sexual assault of two young women by a volunteer high school basketball coach. That court would have affirmed summary judgment for the school in a negligent hiring case, however, if the "claims were premised solely on [the principal's] failure to conduct an Ohio background check and the disregard of [the defendant's] past drug use" because "there was nothing in his criminal history to suggest that he had a propensity to sexually abuse children." *Id.* at *4. The violation that occurred was not "reasonably foreseeable" based on the criminal history. *Id.* In the present case, unlike *Cooper*, there were no "additional facts" such as warnings from students and others regarding inappropriate conduct. Plaintiff here took pains to conceal what he alleged happened and made no complaints to anyone. (Cole Depo. pp. 79-80, 91-93, 99, 105; Shadoan Depo. 103-04). Plaintiff's arguments fail to show any duty, much less any breach to support a negligent hiring claim against Grigson and Cox-Blackburn.

Even if Plaintiff had shown a duty, breach and proximate cause, these Defendants would be entitled to qualified immunity. They were performing a discretionary function within the scope

8

of their authority; therefore, the burden shifted to Plaintiff to show that one or both of them acted in bad faith. There is no evidence whatsoever that these Defendants "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Rowan County v. Sloas*, 201 S.W.3d 469, 481 (Ky. 2006), quoting *Yanero*, 65 S.W.3d at 523. Additionally, there is no evidence of a "clearly established" right of the Plaintiff that was violated by *these Defendants*. Plaintiff claims there was an obvious violation of his clearly established rights by *Shadoan*, but there is no evidence of such a violation by these Defendants. Moreover, there is no evidence they knew or should have known they were violating Plaintiff's clearly established constitutional rights. *S.S. v. Eastern Kentucky University*, 431 F. Supp.2d 718, 734 (E.D. Ky. 2006). The motion for summary judgment will be granted on Plaintiff's negligent hiring claim.

2. <u>Negligent Supervision</u>

Plaintiff contends that a school administrator's duty to supervise is ministerial, thus removing the protection of qualified immunity. [DE 54, p. 12]. In *Yanero*, the court held that supervision of batting practice for the junior varsity baseball team was a ministerial function "in that it involved *only the enforcement of a known rule* requiring that student athletes wear batting helmets during baseball batting practice." *Yanero*, 54 S.W.3d at 529, emphasis added. Likewise, in *Williams v. Kentucky Department of Education*, 113 S.W.3d 145 (Ky. 2005), the supervising teachers ignored the fact that students were openly leaving school and drinking alcohol at a school sponsored activity during school hours, despite clear statutory and regulatory mandates against both. Accordingly, the teachers negligently performed a ministerial duty.

On the other hand, the court said in *S.S.*, "[t]here is an overwhelming abundance of case law, both state and federal, holding that official acts by school staff relating to safety and discipline within schools is 'inherently discretionary....'" *S.S.*, 432 F. Supp.2d. at 734. In *Haney v. Monsky*, 311 S.W.3d 235 (Ky. 2010), the court said:

> [W]e have found that supervising the conduct of others is a duty often left to a large degree – and necessarily so – to the independent discretion and judgment of the individual supervisor. In *Sloas*, we held that a deputy jailer's act of supervising

9

> inmates engaged in a voluntary work program was 'as discretionary a task as one could envision'...."

*Id.* at 244, quoting *Rowan County v. Sloas*, 201 S.W.3d 469, 480 (Ky. 2006). *Rowan County* also distinguished *Yanero* as merely involving "enforcement of a well known rule for safety." *Id.* at 478.

In *Haney,* a children's camp counselor at the Louisville Zoo had an enforcement duty to keep ten seven- and eight-year-old children in the middle of a path as they walked. The court held that enforcement of this duty "was largely subjective and 'left to the will or judgment of the performer,' as keeping the children in the middle of the path could certainly 'be performed in one of two or more ways, either of which would be lawful.'" *Id.* at 243, quoting *Upchurch v. Clinton County*, 330 S.W.2d 428, 430 (Ky. 1959). The counselor was entitled to qualified immunity.

The Kentucky Supreme Court illustrated the importance of the factual context when determining whether a function is ministerial or discretionary in *Lamb v. Homes*, 162 S.W.3d 902 (Ky. 2005). There, a student in a physical education class reported her shorts were missing. The female students were taken in pairs to the girls' locker room and asked to raise their shirts and lower their shorts so the female teacher and administrator could see if they were wearing the missing shorts. No clothing was removed, and underwear remained in place. The students were not touched. The school board had a policy saying, "[i]n no instance shall a school official strip search any student." *Id.* at 904. The court held the officials were not engaged in a ministerial function because the limited search was not a "strip search." *Id.* at 911. The officials were entitled to qualified immunity.

In the present case, Plaintiff does not identify any known rule or policy that was not enforced. It is the opinion of this Court that Grigson and Cox-Blackburn were engaged in discretionary functions with respect to their supervision of Shadoan and the students. It is undisputed that they were acting within the scope of their authority. Accordingly, to overcome qualified immunity, Plaintiff has the burden to prove they acted in bad faith.

Plaintiff never mentions bad faith at all. Instead, he relies on the general duty of school administrators "to take all reasonable steps to prevent foreseeable harm to its students." [DE 54, p. 18, quoting *Yanero*, 65 S.W.3d at 529]. He argues that, after hiring someone they knew had previously been accused of a serious sexual crime, they failed to notify the parents, failed to notify the students, and then allowed Shadoan to conduct after-school, unsupervised tutoring sessions. [DE 54, p. 18]. Plaintiff continues to ignore the fact that Shadoan was *acquitted* of the charges against him, and there was no notice that any student was being harmed until May 2009. He also fails to show they had any duty to take these actions, much less that they acted in bad faith.

Plaintiff has not identified any duty imposed by law or by Board policy that was allegedly breached by these Defendants in their supervision of Shadoan. He also has failed to establish that it was reasonably foreseeable to these Defendants that Shadoan would sexually harass Plaintiff. Plaintiff told no one what was allegedly happening and was not aware of any other students having problems with Shadoan. He testified that neither Grigson, Cox-Blackburn, nor any School Board members knew about Shadoan's alleged touching conduct during the fall of 2008 and the spring of 2009 until May 9, 2009. [Cole Depo., pp. 79-80]. They were not aware of the text messages being sent. *Id.* at 91-93. They were not aware of the request for nude photographs. *Id.* at 99. Plaintiff's girlfriend testified there were no rumors around school about any inappropriate behavior by Mr. Shadoan. [Shumate Depo. 40-41]. Grigson and Cox-Blackburn are entitled to summary judgment on Plaintiff's claim that they failed to adequately supervise Shadoan.

Although there is no allegation in Plaintiff's Complaint about bullying or retaliation after May 9, 2009, Plaintiff argues these new claims in response to summary judgment. [DE 54, pp. 19-20]. The deadline for the parties to move to amend pleadings was December 9, 2010. [DE 9]. It is too late now for Plaintiff to be adding new allegations.

**E.     Outrage**

Plaintiff argues that the conduct of Grigson and Cox-Blackburn constituted "outrage." Kentucky does not allow a duplicative claim of outrage, however, when recovery for emotional

11

distress is already available under a traditional tort. "[W]here an actor's conduct amounts to the commission of one of the traditional torts such as ... negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for emotional distress in those instances must be had under the appropriate traditional common law action." *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. Ct. App. 1993). Rigazio's claim for outrage was dismissed, despite sexual abuse by a teacher for several years, because the emotional distress was compensable under his claim of sexual abuse. Plaintiff's case of *Cooper v. Unthank*, 2009 WL 3320924 (Ky. Ct. App. 2009), says: "An essential element of the tort is that the actor intended to inflict emotional distress and its infliction was not merely the consequence of a separate compensable tort."

Plaintiff has presented no evidence that Grigson or Cox-Blackburn's conduct was "intended only to cause extreme emotional distress." Plaintiff's argument that Grigson delayed reporting Shadoan's conduct to the police and that prompt action might have prevented Plaintiff's suicide attempt is nothing but rank speculation without any factual support. [DE 54, p. 20]. The evidence is that Plaintiff left Shumate's home on Saturday, May 9, 2009 at 11:00 a.m. [Shumate Depo. p. 72]. Plaintiff testified he immediately went home and attempted suicide. [Cole Depo. p. 107]. No one was home at the time. Emergency services were not called until 8:12 p.m. As of 7:34 p.m., Grigson had not received any report regarding Shadoan's conduct. [DE 55-15, p. 2]. There is no evidence whatsoever to support the unwarranted inference that Grigson should have anticipated Plaintiff's suicide attempt and that a call from her would have prevented it.

Plaintiff also complains that Grigson told Shadoan about the allegations against him and, thereby, allowed Shadoan to destroy the text messages to and from Plaintiff. While that conduct may have been inappropriate after the police instructed her not to inform Shadoan, there is no evidence that she did that "only to cause extreme emotional distress in the victim." *Rigazio*, 853 S.W.2d at 298-99. Shadoan testified that Grigson mentioned the allegations as part of her formal process of suspending him, pending the outcome. [Shadoan Depo., pp 96-97]. Plaintiff's other

arguments are repetitions of the negligent hiring and negligent supervision claims and the new matters not alleged in the complaint. In sum, there is no evidence to support a separate tort claim for outrage.

III. CONCLUSION

**IT IS ORDERED:**

1. That the motion for partial summary judgment [DE 45] on Plaintiff's state law claims against Defendant Cox-Blackburn in her official capacity, Defendant Grigson in her official capacity, and the Paris Board of Education [DE 45] is **GRANTED** and these claims are **DISMISSED WITH PREJUDICE**; and

2. That the motion for partial summary judgment [DE 45] on Plaintiff's state law claims against Defendant Cox-Blackburn in her individual capacity and Defendant Grigson in her individual capacity is **GRANTED** and these claims are **DISMISSED WITH PREJUDICE**.

This March 2, 2011.

Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**